652 So.2d 1105 (1995)
James E. PITTMAN
v.
Claudine G. PITTMAN.
No. 93-CA-00424-SCT.
Supreme Court of Mississippi.
March 30, 1995.
Jessie L. Evans, Blackmon Blackmon & Evans, Canton, for appellant.
Ross R. Barnett Jr., Barnett Law Firm, Jackson, for appellee.
En Banc.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION.
On March 17, 1993, the Appellant, James E. Pittman (James), and the Appellee, Claudine G. Pittman (Claudine), were granted a divorce on the grounds of irreconcilable differences in the Chancery Court of Hinds County, First Judicial District. James, being aggrieved by the chancellor's awarding to *1106 Claudine an equitable lien in the parties' home in the amount of $22,759.91 and the granting of attorney's fees to Claudine in the amount of $1,500.00, now brings his appeal to this Court assigning as error the following:
I. WHETHER THE LOWER COURT ERRED IN CREDITING APPELLEE WITH THE SUM OF $22,000.00 AS HER CONTRIBUTION IN THE CONSTRUCTION OF THE PARTIES' MARITAL DOMICILE AND THUS CREATING AN EQUITABLE LIEN FOR THE AFORESAID AMOUNT IN APPELLEE'S FAVOR.
II. WHETHER THE LOWER COURT ERRED IN AWARDING ATTORNEY'S FEES TO APPELLEE.

II. STATEMENT OF THE FACTS.
James and Claudine met in 1984. They became engaged in early 1986, and were married on September 9, 1987. Unto this marriage was born one child, James E. Pittman, Jr. James and Claudine lived together as husband and wife until their final separation on June 15, 1991.
Claudine filed a complaint for divorce from James on July 3, 1991. James filed an answer and a cross-complaint for divorce on August 15, 1991. Prior to trial, James and Claudine entered into a written agreement consenting to divorce on the grounds of irreconcilable differences. Both parties also agreed to withdraw all contests and denials except for the contested issues set out in the agreement to be resolved by the court. The issues left for the court's determination were:
1. Child custody, visitation rights, and amount of child support.
2. Who could claim minor child as dependent for income tax purposes.
3. Whether defendant [James] should be required to carry life insurance on his own life for the benefit of the minor child.
4. Credit, if any, to be given Claudine G. Pittman, for alleged investments made in marital residence.
5. Credit to be given James E. Pittman, if any, for alleged investments made in parties' Mercedes automobile.
6. Amounts, if any, owed to James E. Pittman for payment of 1987 tax liability.
7. Which party, if any, should be assessed court costs and attorney's fees, if any.
After trial, the chancellor rendered his opinion on February 19, 1993, finding that, while both parties were fit and proper persons to have custody of the minor child, Claudine should be granted primary custody with James given reasonable visitation rights. James was ordered to pay $180.00 per month in child support and to maintain medical insurance on the minor child with the parties paying equally all reasonable and necessary expenses not covered by insurance. However, James was not ordered to carry life insurance for the benefit of the child. James was allowed to claim the minor child as a dependent for income tax purposes provided his child support payments were kept current. The chancellor also found that Claudine did not owe James any funds for the payment of a 1987 tax liability. The chancellor further found that Claudine expended the sum of $22,759.91 in the acquisition of the marital home and that she should have an equitable lien for her interest in the property in this amount. The chancellor did not allow James any credit for the amounts he had invested in the parties' automobile. With regard to the issue of attorney's fees, the chancellor found that each party was equally capable for paying their respective fees. However, he did assess an attorney's fee of $1,500.00 and the costs of this proceeding against James because it was necessary for Claudine to bring an additional action to set aside a conveyance of the marital home to his sister and niece. Feeling aggrieved, James filed his notice of appeal on April 16, 1993.

III. ANALYSIS.

I. WHETHER THE LOWER COURT ERRED IN CREDITING APPELLEE WITH THE SUM OF $22,000.00 AS HER CONTRIBUTION IN THE CONSTRUCTION OF THE PARTIES' MARITAL DOMICILE AND THUS CREATING AN EQUITABLE LIEN FOR THE AFORESAID *1107 AMOUNT IN APPELLEE'S FAVOR.
Claudine has both a B.S. degree and a Master's degree in Business Administration. She had been employed by Jackson State University (JSU) for seven years at the time of this trial. Prior to working at JSU, Claudine was employed as the director of accounting at Alcorn State University (ASU). When she started working for JSU in September of 1986, she was making $30,000.00 per year and her present gross pay was $3,416.67 per month. In addition, she also received $200.00 per month for support from her prior marriage. Her monthly net take-home pay was $2,689.96. Claudine's financial statement revealed that her monthly expenses were $3,739.00.
Claudine estimated that approximately 80% of her income during her marriage to James was used for the payment of the household expenses. She was able to save very little money, approximately $50.00 per month, during this time. Claudine testified that the household expenses that she paid included utilities, food, clothing for the entire family (including James and his two children from a previous marriage), the furniture payments, child care, car insurance and medical insurance. In addition, James and Claudine agreed to conceive a child through in vitro fertilization and she testified that she paid the expenses for this procedure.
During the marriage, James worked for the State of Mississippi at a salary of approximately $30,000.00 to $32,000.00 per year until he was discharged in September of 1988. He then started working for the City of Jackson in December 1988, and his income dropped. James was later reinstated by the State. His salary at time of trial was $2,800.00 per month and his net pay was approximately $1,700.00 per month.[1] James' current monthly expenses were approximately $2,600.00. James said that he had to borrow money from family members in order to meet his current financial obligations. James has four other children in addition to James Pittman, Jr. and his current monthly child support obligation was $768.00. James testified that he and Claudine jointly paid the household expenses. James testified that expenses he paid during the course of the marriage included the down payment on the Mercedes, the monthly payments on the Mercedes, the telephone bill, the light bill, taxes on the house, insurance on the house, mortgage payments, and car tags and inspection stickers.
James bought the land upon which the marital home was built while he and Claudine were dating. The contract for the sale of this land was dated September 18, 1984, and the warranty deed was transferred to James in February, 1985. Claudine testified that James paid $9,500.00 for this lot. The couple became engaged in early 1986. Claudine testified that it was at that time that they decided to build the house together. Claudine said that they both contributed to the construction of this house. She said construction began in late 1985 or early 1986. Claudine testified that the house was completed on July 15, 1987, and they moved into the house in August, 1987. The couple later married on September 9, 1987.
At trial, Claudine asked the court to give her credit for the amount she expended on the parties' marital domicile and to be given a lien for her interest in the home. James asked that he be given credit for repairs and payment of $44,000 he made on the Mercedes automobile titled in Claudine's name. In ruling on these requests, the chancellor stated:
This Court finds from the evidence that Claudine Pittman expended the sum of $22,759.91 in the acquisition of the marital residence and, although the defendant [James] claims an offset for funds that he contributed toward the purchase of the Mercedes automobile, the Court finds that the property has appreciated in value over said period of time considerably and that she should have an equitable lien for her interest in the property in said amount. The money spent on repairs enures to his *1108 benefit by enhancing the value above the lien.
The Court further finds from the evidence that the defendant should not be given credit for amounts he invested in the automobile which is now agreed to be the property of the plaintiff [Claudine] as the amount would be absorbed by the defendant's [James'] use and benefit of the automobile. The loss and depreciation over the years requires, in equity, that the automobile should be the sole property of the plaintiff [Claudine].
James on appeal contends that the lower court erred in its refusal to give him credit for the payments that he made on the automobile awarded to Claudine and for the repairs that he made to the home after Claudine's departure from the home. James maintains that equitable treatment requires that his contributions be compared with the contributions claimed by Claudine in completing the construction of the parties' marital domicile. Claudine, on the other hand, contends that the chancellor was not manifestly wrong in his determinations. She asserts that because the chancellor's decision is supported by substantial and credible evidence, his decision should not be disturbed.
Our scope of review in domestic relations matters is limited. Crow v. Crow, 622 So.2d 1226 (Miss. 1993). "Findings of a Chancellor will not be disturbed or set aside by this Court on appeal unless we are of the opinion the decision made by the trial court was manifestly wrong and not supported by substantial, credible evidence, [citations omitted], or unless an erroneous legal standard was applied." Snow Lake Shores Property Owners Corp. v. Smith, 610 So.2d 357, 360 (Miss. 1992).
Jernigan v. Jernigan, 625 So.2d 782, 784 (Miss. 1993).
As the basis for her request for an equitable lien for her contribution in the house, Claudine said that she assisted in the building of the house from the picking out of the plans to the actual purchase of the items that went into the house and that she contributed $22,759.91 toward its construction.
James pledged approximately $50,000.00 in CD's for the construction of this house.[2] Claudine estimated that the house cost around $60,000.00 to build. She also said the except for her contribution, all of the construction expenses were paid by James. Claudine estimated the retail value of the house at the time of trial to be approximately $85,000.00. A tax statement, introduced into evidence revealed the value to be $82,450.00.
During Claudine's testimony, she introduced into evidence a handwritten list of expenses she claims to have paid with regard to the construction totaling $22,759.91. This list contained an item entitled "paid in checks to James E. Pittman for house labor and supplies" which totaled $13,017.00. Claudine said that these checks, which were made out to James, were for labor and items that were purchased for the house. Upon cross-examination of Claudine, it was revealed that some of these checks were written both before they were married and after the date she said the house was completed. However, with regard to the checks written after July 15, 1987, Claudine said that there were still expenses which were incurred relating to the house. It was also brought out on cross-examination of Claudine that notations on the checks revealed that some of the checks were noted, "loan for child care," "loan," "birthday," "household expenses," "grievance filing fee," and "utilities." Claudine said James knew that a check noted "loan" was a loan which he had to repay. James said that he does not remember the word "loan" being on the checks when they were written and he was not aware that Claudine was making a loan to him.
James admitted that during an argument with Claudine, he offered to buy her interest in the house. He also admitted writing her checks totaling $26,000.00, but he said he told Claudine at the time he wrote the checks that they were not any good. He said that Claudine just "pulled a number out of the air." James estimated Claudine's equity in the house to be approximately $11,000.00. The chancellor obviously gave credit to Claudine for all the amounts claimed by her in *1109 that the amount of the lien granted by the chancellor was $22,759.91.
James claims that he is entitled to an offset to Claudine's contributions to the house in two ways: (1) his investment in the Mercedes automobile; and (2) repairs he made to the home after Claudine left the marital domicile. First, as to James' investment in the Mercedes, Claudine readily admitted that James made the majority of the payments on this automobile. The 1985 Mercedes was purchased in 1987 and was titled in Claudine's name only. The car was financed for 60 months with the monthly payments being $603.00. Claudine testified that at the time of this trial the loan value of the car was approximately $10,000.00 and the retail value was about $13,000.00.
At the time of the couple's separation there were 12 payments still owing on this car. Claudine made the remaining payments after she left the home. Claudine had made three payments on the car before she actually took over the remaining payments. Therefore, Claudine made a total of 15 payments on the Mercedes and James made 45. Claudine testified that James' payments on the car were a gift to her for incurring so many expenses in having his child.
There is a great deal of dispute over the amount of time or how often James used this automobile. Claudine testified that James drove the Mercedes "regularly." On the other hand, James said that the amount of time he had access to using the Mercedes was "virtually null." James said Claudine used the Mercedes 99% of the time.
James made the down payment on this car, but the amount that he paid was disputed. Claudine said the down payment was $7,500.00 while James contended that it was $10,000.00.[3] James also paid for some of the car's repairs. In addition, James said he bought the car's tags and inspection stickers.[4] Therefore, it would appear that Claudine's contribution to the Mercedes was approximately $9,045.00, while James' investment was at least $34,000.00 to $37,000.00.
James also claims that after Claudine left the marital home, he had to make a number of repairs to the house. However, Claudine testified that when she left the home, it was in good condition. The only needed repair that she knew of was a minor paint job. Claudine said James had never mentioned any needed repairs and she does not know that any repairs had been made to the house. James said that he incurred approximately $9,000.00 in expenses in repairing the house. James testified that he paid for these repairs with a combination of cash and checks. To make these repairs, James had to get a loan in the amount of $5,000.00 to $6,000.00. James said that some of the needed repairs were the replacement of some of the carpet, repair of scarred walls, repair of a few of the walls which had holes in them, repair of several kitchen appliances, and replacement of several doorknobs. James testified that these repairs had to be made before the house could be sold.
This Court in Davis v. Davis, 638 So.2d 1288 (Miss. 1994), recently said,
The Chancery Court has authority, where equities so suggest, to order a fair division of property accumulated through joint contribution and efforts of the parties. Flowers v. Flowers, 624 So.2d 992 (Miss. 1993); Brown v. Brown, 574 So.2d 688, 690 (Miss. 1990); Brendel v. Brendel, 566 So.2d 1269, 1273 (Miss. 1990). A spouse is not automatically entitled to an equal division of jointly accumulated property. Brown v. Brown, 574 So.2d at 691; Dillon v. Dillon, 498 So.2d 328, 330 (Miss. 1986). The matter is committed to the discretion and conscience of the chancellor, having in mind all the equities and other relevant facts and circumstances. Jernigan v. Jernigan, 625 So.2d 782; Brown v. Brown, 574 So.2d at 691; Robinson v. Irwin, 546 So.2d 683, 685 (Miss. 1989).
The Court seeks equity by reference to the economic contribution made by each to the acquisition and maintenance of the property, and may not disregard a spouse's economic contributions just because they were not monetary in form. Johnson v. *1110 Johnson, 550 So.2d 416, 420 (Miss. 1989); Regan v. Regan, 507 So.2d 54, 56 (Miss. 1987); Pickle v. Pickle, 476 So.2d 32, 34 (Miss. 1985).
Davis, at 1292. See also, Parker v. Parker, 641 So.2d 1133 (Miss. 1994); Hemsley v. Hemsley, 639 So.2d 909 (Miss. 1994); Draper v. Draper, 627 So.2d 302 (Miss. 1993). Also, "A spouse who has made a material contribution toward the acquisition of property which is titled in the name of the other may claim an equitable interest in such jointly accumulated property incident to a divorce proceeding."[5]Jones v. Jones, 532 So.2d 574, 580 (Miss. 1988). See Watts v. Watts, 466 So.2d 889, 890-91 (Miss. 1985).
In addition, it is clear that the chancery court has the authority to impose an equitable lien. Lindsey v. Lindsey, 612 So.2d 376, 380 (Miss. 1992). See Dudley v. Light, 586 So.2d 155, 159-60 (Miss. 1991); Neyland v. Neyland, 482 So.2d 228, 230-31 (Miss. 1986). In discussing an equitable lien, the Court in Lindsey said:
Characteristic of equitable liens is that they are not estates or property in the thing itself, nor are they rights to recover the thing, that is they are not rights which may be the basis of a possessory action. They are merely a charge on property for the purpose of security, and are ancillary to and separate from the debt. They are neither debts nor rights of property, but merely remedies for a debt. Of extreme importance is the fact that such liens do not divest the debtor of title or possession. See 51 Am.Jur.2d Liens § 23 (1970).
Lindsey, 612 So.2d at 380 (emphasis in original).
In Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss. 1994), this Court said, "fairness is the prevailing guideline in marital division" Ferguson also said, "it must be remembered, the goal of the chancellor in a divorce case is to do equity." Id., at 934.
Considering this Court's recent pronouncement in Ferguson that fairness is to be the "prevailing guideline" in marital division cases, it is this Court's opinion that the chancellor erred. Claudine was awarded exactly what she requested while James' requests for the most part went unfulfilled.
The Court addresses James' request for a set off of Claudine's contribution. First, as to the improvements made to the home, the chancellor seems to have reached a fair and just result. The chancellor held that the benefits of the improvements inured to James by enhancing the value of the home above the lien awarded to Claudine. This seems to be a just result and this Court affirms the chancellor's holding.
However, the situation concerning James' investment in the Mercedes seems to warrant a different conclusion. As discussed earlier, the evidence is in conflict regarding James' use and enjoyment of the automobile. However, it cannot be disputed that James made the majority of the payments on the Mercedes. While it seems clear that James should not be given credit for all of the money he invested in the car, as that amount far exceeds the car's actual worth, it would appear that James should have been given at least some credit for his investment, perhaps a proportionate share of his investment compared with the car's present value. Cummings v. Anderson, 94 Wash.2d 135, 614 P.2d 1283, 1289 (1980) (holding apparent inequity in property distribution may result where one spouse's award in real property would increase in value, while other spouse's award in personal property would only depreciate). As a result of Ferguson's directive that fairness be the main guideline in marital distributions incident to divorce, this Court holds that the chancellor was manifestly in error in giving James no credit at all for his investment in the Mercedes automobile. Therefore, this Court finds that this case must be reversed and remanded to the chancellor to evaluate James' contribution to this automobile as an offset against his ex-wife's lien against his realty.

II. WHETHER THE LOWER COURT ERRED IN AWARDING ATTORNEY'S FEES TO APPELLEE.
*1111 In the instant case, the chancellor awarded Claudine $1,500.00 in attorney's fees for an ancillary suit involving the marital home and assessed James with the cost of this divorce proceeding. In his opinion the chancellor stated:
Consistent with the ruling of the Court in Martin v. Martin, 566 So.2d 704 (Miss. 1990), each party is equally capable of paying their attorney's fees, and, therefore, no attorney's fees are awarded in this cause, but both parties are receiving properties from which the fees can be paid or they may be paid from their earnings, except as follows.
The Court does assess an attorney's fee of $1,500 and the costs in this proceeding against the defendant [James] in view of the fact that it was necessary for the plaintiff [Claudine] to bring an additional action to require that defendant [James] be prohibited from transferring the marital domicile and to set a previous conveyance aside. Therefore, a reasonable attorney's fee of $1,500 and the entire cost of this proceeding is assessed to the defendant [James] as the plaintiff [Claudine] is the prevailing party.
On appeal, James contends that it was error to award attorney's fees to Claudine in light of the fact that she was financially able to pay her fees. However, Claudine asserts that this is not an ordinary divorce matter because she was forced to go to court to have the husband's conveyance of the property to his sister and niece set aside.
As a result, it was necessary to take his sister's deposition. The court reporter charged $114.15 for this deposition. Also, Claudine's attorney spent about three hours at the hearing. Claudine was charged $125.00 per hour by her attorney. Claudine then testified that the total amount owing to her attorney on the day of this trial was $6,182.15.[6] As to the parties' ability to pay, there does not seem to be a great disparity in their financial situations. It is clear, and admitted by both parties, that Claudine makes more money each month than does James.
"Generally the award of attorney's fees in a divorce case is left to the discretion of the trial court." Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss. 1994) (quoting Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss. 1988)). "We are `reluctant to disturb a chancellor's discretionary determination whether or not to award attorney fees and of the amount of [any] award.'" Ferguson v. Ferguson, 639 So.2d at 937 (Miss. 1994) (quoting Geiger v. Geiger, 530 So.2d 185, 187 (Miss. 1988)). In addition Ferguson states:
The question of attorney fees in a divorce action is a matter largely entrusted to the sound discretion of the trial court. Smith v. Smith, 614 So.2d 394, 398 (Miss. 1993); Kergosien v. Kergosien, 471 So.2d 1206, 1207 (Miss. 1985). "If a party is financially able to pay her attorney, an award of attorney's fees is not appropriate." Martin v. Martin, 566 So.2d 704, 707 (Miss. 1990). See also Jones v. Starr, 586 So.2d 788, 792 (Miss. 1991) ("Generally, it is true that, unless the party can establish inability to pay, attorney's fees should not be awarded by the court."). The criteria to be utilized in determining attorney fees are found in McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982).
Ferguson, at 937.
Though the general rule in Mississippi is that if a party is financially able to pay his attorney's fees he should do so, this is a matter which is entrusted to the chancellor's sound discretion.
Furthermore, there is a great body of caselaw allowing trial courts to award attorneys' fees, in divorce actions, where fraudulent conveyance is involved. In re Marriage of Pahlke, 154 Ill. App.3d 256, 107 Ill.Dec. 407, 412-413, 507 N.E.2d 71, 76-77 (holding trial court correctly ordered husband to pay spouse's attorney fees where fees were substantially incurred in voiding fraudulent conveyance); appeal denied, In re Pahlke, 116 Ill.2d 556, 113 Ill.Dec. 304, 515 N.E.2d 113 (1987); Watson v. Watson, 73 Md. App. 483, 534 A.2d 1365, 1374 (1988) (holding under rules of court that imposition of attorneys' fees as sanction for fraudulent conveyance *1112 was proper); see also Gabaig v. Gabaig, 717 P.2d 835, 840 (Alaska 1986); Tessitore v. Tessitore, 31 Conn. App. 40, 623 A.2d 496, 498-99 (1993).
In the instant case, the chancellor obviously concluded that James' conduct in trying to convey the house to his sister and niece warranted the imposition of these fees. By his decision the chancellor did not "reward" Claudine, but reimbursed her the extra legal costs incurred as a result of James' actions. Though Claudine did not establish her inability to pay her attorney's fees, this Court holds that the chancellor was not manifestly wrong and that his decision to award these fees does not constitute error.

IV. FINAL ANALYSIS AND CONCLUSION.
This Court reverses and remands this matter to the chancery court to consider and determine James' claim against in the Mercedes automobile as an offset to the lien against his realty. In addition, this Court affirms the issue regarding costs and attorney's fees.
JUDGMENT IS AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
HAWKINS, C.J., and PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
SULLIVAN, J., concurs in part.
McRAE, J., concurs in part and dissents in part with separate written opinion joined by DAN M. LEE, P.J.
SULLIVAN, J., joins in part as to attorney fees.
McRAE, Justice, concurring in part and dissenting in part:
The majority correctly reverses and remands this case so that the chancellor might consider James' claimed interest in the Mercedes purchased for Claudine as an offset to the lien she was given in his house. As we stated in Jones v. Jones, 532 So.2d 574, 580 (Miss. 1988), "[a] spouse who has made a material contribution toward the acquisition of property which is titled in the name of the other may claim an equitable interest in such jointly accumulated property incident to a divorce proceeding." James, therefore, is certainly entitled to credit for the down payment and subsequent installment payments he made on the vehicle for four years.
I part ways, however, with the majority on the issue of attorney's fees. While generally the award of attorney's fees in a divorce case is left to the discretion of the trial court, such mandates are not without their caveats. This Court has stated emphatically that "if a party is financially able to pay her attorney, an award of attorney's fees is not appropriate." Martin v. Martin, 566 So.2d 704, 707 (Miss. 1990). The majority admits that Claudine was found to be financially able to pay her attorney, yet chose to follow only that portion of the law which states that such an award is within the chancellor's discretion. Almost as an afterthought, it notes also that an award of attorney's fees is appropriate as a punitive measure when the fraudulent conveyance of real property is involved, apparently determining sua sponte that a prior conveyance of the property by James to his sister and niece was fraudulent. Thus, James wins the battle but loses the war. He gains the opportunity he sought to obtain an equitable lien against the Mercedes, but still owes Claudine's attorney fees. Generally, if attorney fees have been awarded below, we assess, in additional, fifty percent of the attorney fees for the appeal. Is Claudine entitled to those fees as well?
Accordingly, while I agree with the majority's decision to reverse and remand on the issue of James' interest in the Mercedes, I dissent from that part of the opinion which affirms the chancellor's award of attorney fees to Claudine.
LEE, P.J., joins this opinion.
SULLIVAN, J., joins in part as to attorney fees.
NOTES
[1] James owns a piece of rental property, but he testified that he has relinquished his interest in that property. He also once operated a liquor store but no longer does so because he said the store was losing money. He also for a short period of time rented out the couple's marital home.
[2] James has been paying $350.00 on the house note since 1987.
[3] James estimated his investment in the Mercedes to be between $41,000.00 and $42,000.00.
[4] However, Claudine testified that she paid for the Mercedes' tag at least one year.
[5] NOTE: While both parties contributed to the home, the home was completed and they had already moved in by the time of their marriage in the instant case.
[6] Claudine's attorney's time sheet was introduced into evidence as Exhibit No. 7.