904 So.2d 192 (2005)
Kenneth Donald HUMPHRIES, Appellant
v.
Robyn Rogers HUMPHRIES, Appellee.
No. 2003-CA-02343-COA.
Court of Appeals of Mississippi.
June 14, 2005.
*194 Daniel Tucker, Booneville, attorney for appellant.
John A. Ferrell, Booneville, attorney for appellee.
Before BRIDGES, P.J., IRVING and MYERS, JJ.
BRIDGES, P.J., for the Court.
¶ 1. Kenneth and Robyn Humphries ended their marriage by consenting to a divorce due to irreconcilable differences. Unable to resolve certain financial aspects of their divorce, Kenneth and Robyn submitted the unresolved issues to the Alcorn County Chancery Court for determination. Kenneth, dissatisfied with certain aspects of the chancellor's ruling, appealed to this Court. Kenneth alleges the following issues, listed verbatim:
I. THE TRIAL COURT COMMITTED MANIFEST ERROR AND THUS ABUSED ITS DISCRETION IN AWARDING THE APPELLEE A LIEN IN NON-MARITAL PROPERTY.
II. THE TRIAL COURT COMMITTED MANIFEST ERROR AND THUS ABUSED ITS DISCRETION IN ORDERING THE APPELLANT TO PAY THE BUSINESS DEBT.
III. THE TRIAL COURT COMMITTED MANIFEST ERROR AND THUS ABUSED ITS DISCRETION IN ORDERING THE PONTOON BOAT TO BE SOLD AND THE EQUITY SPLIT.
Finding no error, we affirm.

FACTS
¶ 2. Kenneth earned his living as an entrepreneur, particularly in the garment industry. Prior to the marriage, Kenneth established a business called Corinth Trade & Distribution. After Kenneth and Robyn married, Corinth Trade "merged" into another entity called H & H Wholesale, Inc. Kenneth put all of H & H's stock in Robyn's name. Kenneth and Robyn also purchased and managed a collections agency; LeBlanc, Nichols and Page, Inc. Further, the couple owned and managed businesses called Budget Phone, Chadco, and Guntown Cash Advance.
¶ 3. As mentioned, Kenneth and Robyn consented to a divorce due to irreconcilable differences, but they could not resolve the distribution of their property. They sought the chancellor's resolution of the following issues: (1) distribution of the marital home, (2) ownership of the businesses, (3) ownership of the business assets, *195 (4) responsibility of the business debts, and (5) reimbursement of money invested into the businesses.
¶ 4. Chad Humphries owned the title to the marital home. Chad is Kenneth's son from a previous marriage. Accordingly, the chancellor held that the home was not a marital asset. However, Robyn requested reimbursement of money that she spent on improving the home. The chancellor determined that Robyn would receive $6,000 as reimbursement. The chancellor gave Robyn a lien against the home as security for payment of the $6,000.
¶ 5. Regarding the businesses, the chancellor determined that H & H Wholesale, Inc., LeBlanc, Nichols and Page, Inc., Budget Phone, Guntown Cash Advance and Chadco were all marital assets. The chancellor gave Robyn the exclusive use, possession and ownership of Guntown Cash Advance. Robyn received a one-half ownership in the other four businesses, as well as a one-half ownership in the assets of those businesses.
¶ 6. However, LeBlanc, Nichols and Page was encumbered by two outstanding notes. One to Edward McKinney and the other to The People's Bank & Trust Company. The chancellor determined that those notes were Kenneth's personal debts. As a result, the chancellor determined that Kenneth was solely liable for payment of those notes. The chancellor relieved Robyn from any responsibility of those debts.

STANDARD OF REVIEW
¶ 7. "Chancellors are vested with broad discretion and this Court will not disturb the chancellor's findings unless the court was manifestly wrong, the Court abused its discretion, or the Court applied an erroneous legal standard." Foster v. Foster, 788 So.2d 779 (¶ 4) (Miss.Ct.App.2000). This Court must respect the chancellor's findings of fact if those findings are supported by credible evidence and are not manifestly wrong. Steiner v. Steiner, 788 So.2d 771 (¶ 7) (Miss.2001).

I. DID THE TRIAL COURT COMMIT MANIFEST ERROR AND ABUSE ITS DISCRETION IN AWARDING THE APPELLEE A LIEN IN NON-MARITAL PROPERTY?
¶ 8. This issue concerns the chancellor's decision to award an equitable lien on the marital home. As mentioned, the chancellor determined that Kenneth's son owned the title to the marital home. Further, that Robyn made improvements to the marital home and was entitled to reimbursement for the money she spent on those improvements. Consequently, the chancellor gave Robyn a lien to secure the reimbursement of that money.
¶ 9. Kenneth claims that the chancellor committed manifest error and abused his discretion when he awarded a $6,000 lien against the home. Kenneth argues that the home was a third-party asset and was not subject to equitable distribution. Kenneth reasons that the chancellor should not have given Robyn a lien on property owned by a third party.
¶ 10. Chancery courts have broad equity powers in domestic relation cases and in dividing marital assets and making provisions for equitable division of marital property. Ferguson v. Ferguson, 639 So.2d 921, 926-27 (Miss.1994). Chancellors have authority to impose equitable liens to secure payment of an award. Pittman v. Pittman, 652 So.2d 1105, 1110 (Miss.1995). This Court is unaware of any precedent allowing chancellors to impose equitable liens on third party property. We are mindful that Kenneth complains of the chancellor's encumberance of third party property. Kenneth has no ownership *196 interest in the marital home, as he titled the home to his son, Chad. One prudential limit on standing is that a litigant must normally assert his own legal interests rather than those of third parties. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Having no interest in the encumbered property, Kenneth has no standing to assert error in the chancellor's decision.
¶ 11. Regardless, this issue is moot because Kenneth paid the $6,000 lien. Having paid the amount, the lien is extinguished. Accordingly, this issue is resolved, as the lien is released because Kenneth paid the amount connected to the lien.

II. THE TRIAL COURT COMMITTED MANIFEST ERROR AND THUS ABUSED ITS DISCRETION IN ORDERING THE APPELLANT TO PAY THE BUSINESS DEBT.
¶ 12. This issue follows the chancellor's distribution of Kenneth and Robyn's businesses and liability of business debt. After the chancellor applied the Ferguson factors, he determined that H & H Wholesale, Inc., LeBlanc Nichols and Page, Inc., and Guntown Cash Advance were marital assets. The chancellor awarded Robyn the entire ownership of Guntown Cash Advance. Additionally, the chancellor gave Robyn and Kenneth each a one-half interest in H & H Wholesale, Inc. and Leblanc Nichols and Page, Inc. The chancellor then declared that Kenneth would be responsible for the debts of LeBlanc Nichols and Page, Inc. Those debts are the two deeds of trust on real property, one with The Peoples Bank and Trust Company, the other with Edward McKinney.
¶ 13. Kenneth claims the chancellor erred by considering the two businesses to be marital property for dividing the assets and then consider the businesses to be non-marital assets for dividing the liabilities. Robyn responds that the chancellor did not commit error by applying equity to compensate her for money she invested against the debt that Kenneth accumulated against the businesses prior to the marriage. Further, that the chancellor's ruling reflects Kenneth's actions in removing money from the businesses while Robyn did not withdraw any money from the businesses.
¶ 14. Kenneth is aggrieved by the chancellor's distribution of property. In dividing a divorcing couple's property, a chancellor must first determine which assets are marital and which assets are non-marital. Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1995). Marital property is any and all property acquired during the marriage. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Marital assets are subject to equitable distribution by the chancellor. Id. The chancellor may divide the marital assets as equity requires. Burnham-Steptoe v. Steptoe, 755 So.2d 1225(¶ 25) (Miss.Ct.App.1999). "Chancellors are vested with broad discretion and this Court will not disturb the chancellor's findings unless the court was manifestly wrong, the Court abused its discretion, or the Court applied an erroneous legal standard." Foster v. Foster, 788 So.2d 779(¶ 4) (Miss.Ct.App.2000).
¶ 15. As Kenneth asserts, precedent indicates that a decision to consider a business marital property for the purpose of dividing assets, while considering that same business non-marital property for the purpose of dividing liabilities, can be considered inequitable. See Burnham-Steptoe, 755 So.2d at (¶ 28) (holding that it was not an abuse of discretion to divide business assets equally and, at the same time, divide business debts equally). However, Kenneth is misplaced in his interpretation *197 of Steptoe. Steptoe does not stand for the proposition that there can be no circumstances where an unequal portion of debts could be allocated to one of the parties in the equitable division of marital assets, including debts. The case merely holds that the lower court in that case did not commit error in providing for an equitable distribution which allocated the debts equally along with the assets of a particular corporation. Burnham-Steptoe, 755 So.2d at (¶ 28).
¶ 16. Robyn never claimed she was uninvolved in H & H. Robyn testified that she set up most of the business procedures, trained the staff on computers, set up new Internet programs, went forward on an inventory program, answered the phone and took complaints from customers. She discussed financial issues with the bookkeeper, such as cash flow problems and checks written against insufficient funds. Nor has Robyn claimed a lack of involvement with LeBlanc, Nichols and Page. LeBlanc, Nichols and Page was incorporated on June 22, 1999. Kenneth purchased LeBlanc, Nichols and Page, Inc., a collection business, and moved it to Corinth, Mississippi. Later, Kenneth and Robyn moved LeBlanc to another location in Corinth. Robyn contributed $10,000 toward the purchase of a new building. She also testified that she worked with the collection company, prepared warehouse blueprints and remodeling of the building, and was instrumental in laying that out. She performed design functions, development, and plans for the inside. They remodeled the building after they purchased it. She cleaned the building, helped set up equipment, helped move furniture, and helped Kenneth with the inventory. Robyn also testified that she signed documents at the bank and used the building as collateral to procure funds for the business.
¶ 17. Rather than claiming a lack of involvement in the businesses, Robyn argues that the chancellor's ruling was a consideration in the equitable division of marital assets based on a totality of the circumstances involving the dissolution of the marriage. Robyn claims that Kenneth, beset by financial instability, benefitted from financial contributions made by Robyn. Robyn also claims Kenneth removed money from the marital businesses while she was financially insecure. Robyn concludes that the chancellor simply applied equity in light of Kenneth's inequitable conduct.
¶ 18. The record indicates that Kenneth had been in the garment business for many years. During those years, Kenneth procured a loan from the Small Business Administration. At the time of the marriage, Kenneth owed more than one million dollars towards that loan. What is more, testimony indicated that Kenneth owed two vendors a "considerable sum" of money. Additionally, Kenneth filed for bankruptcy in September of 2001, but never proceeded to finalize the bankruptcy.
¶ 19. The record also indicates that Robyn made substantial financial contributions to Kenneth's ability to stay in business. Robyn contributed funds she earned prior to the marriage. Kenneth admitted Robyn's credit rating and credit cards were the main factors that permitted the businesses to continue operation. When Robyn and Kenneth purchased a building for LeBlanc, Nichols and Page in June of 2000, Robyn contributed $10,000 toward that purchase. Additionally, Kenneth and Robyn acquired the building by financing the purchase. The building had two outstanding mortgages secured by deeds of trust: one was to Edward McKinney, signed by Kenneth, the other was to Peoples Bank and Trust Co., signed by Robyn. The mortgage to McKinney was for *198 $60,000. The second mortgage to People's Bank was for $100,119. The second mortgage, obtained in August of 2001, resulted in $50,000 of the funds being used to pay Kenneth's preexisting debt. The remaining $50,000 was used to purchase inventory for H & H. At the time of the divorce, the total of the two debts was less than $100,000.
¶ 20. Though Robyn was involved with the businesses, Robyn claims Kenneth completely controlled the businesses, including the financial matters of the corporations. Robyn demonstrated just how Kenneth benefitted from his control of the financial matters of the corporations. The record indicates that from the time the couple separated in May of 2002, until the trial in July of 2003, Robyn received little, if any, funds from the corporations while Kenneth continued to withdraw large sums of money from them.
¶ 21. During the fifteen months between the date of separation and trial, Kenneth drew $200 a week from the Guntown Cash Advance business, that later increased to $300 a week. Kenneth also received a monthly $3,332.50 salary from H & H. Kenneth made an additional $1,000 to $1,200 per month in cash sales at flea markets. Accordingly, Kenneth's total monthly income was approximately $5,800 per month. Kenneth admitted that since the date of separation, Robyn received nothing from these businesses. The chancellor noted that, according to Kenneth's financial statement, Kenneth had received some $54,966.90 from the corporation during the months of separation, while Robyn had drawn nothing.
¶ 22. While a chancery court has the authority to order an equitable division of marital property, there is no automatic right to an equal division of joint accumulated property. The division is left to the discretion of the court. Draper v. Draper, 627 So.2d 302, 305 (Miss.1993). The chancellor applied the Ferguson factors and awarded the corporate stock in both corporations equally.
¶ 23. The chancellor was duty bound to consider the degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets. Ferguson, 639 So.2d at 928. In determining that Kenneth would be solely responsible for the business debts, the chancellor indicated that he based his decision on Robyn's contribution to the continuation of Kenneth's businesses. Additionally, the chancellor indicated that Kenneth's behavior following the couple's separation played a significant role in allocating the business debt to Kenneth. The chancellor's intent is to balance Kenneth's financial stability against Robyn's instability during the separation and, additionally, to compensate Robyn for the funds Kenneth withdrew from the jointly owned businesses. The chancellor noted that he based his decision on the goal of a final dissolution of the marriage, precluding the need for further protracted litigation between Kenneth and Robyn. Further, the chancellor also noted his desire to leave the parties in a financially stable condition.
¶ 24. "[I]t is the broad inherent equity powers of the chancery court that give it the authority to act." Ferguson, 639 So.2d at 927. "General equity principles of fairness undergird this authority." Id. In making an equitable distribution of marital property, a chancellor is not required to divide the property equally. Drumright v. Drumright, 812 So.2d 1021, 1026(¶ 14) (Miss.Ct.App.2001). The matter is committed to the discretion and conscience of the chancellor, having in mind all the equities and other relevant facts and circumstances. Pittman, 652 So.2d at 1109 (citations omitted). "[F]airness *199 is the prevailing guideline in marital division." Ferguson, 639 So.2d at 929. In presiding over a divorce case, the chancellor's goal is to achieve equity. Id. at 934. Here, the evidence suggests that the chancellor acted upon his duty to divide the marital property and marital debt fairly, albeit unequally. Accordingly, we affirm.

III. THE TRIAL COURT COMMITTED MANIFEST ERROR AND THUS ABUSED ITS DISCRETION IN ORDERING THE PONTOON BOAT TO BE SOLD AND THE EQUITY SPLIT.
¶ 25. This issue results from the chancellor's order that Kenneth sell a pontoon boat and divide the proceeds with Robyn. After a temporary hearing in this matter, the chancellor determined that the parties owned a pontoon boat with an approximate value of $8,000. The chancellor ordered Kenneth to sell the pontoon boat within thirty days of June 6, 2002. Further, Kenneth was to tender $4,000 to Robyn. Until he could arrange the sale of the pontoon, Kenneth had to give Robyn $200 per week. The weekly payments of $200 were to be deducted from Robyn's $4,000 portion of the pontoon.
¶ 26. Subsequently, the chancellor entered his bench opinion. According to his bench opinion, the chancellor, once again, ordered Kenneth to sell the pontoon boat and split the proceeds equally with Robyn. On appeal, Kenneth argues that the chancellor abused his discretion and committed error when he repeated his order to sell the pontoon boat and split the proceeds equally with Robyn. Kenneth claims that Robyn received her one-half interest twice. Kenneth argues that the chancellor's decision to order Robyn to receive another one-half interest would be giving her the entire interest in the pontoon boat. Kenneth claims that the chancellor should not have ordered the pontoon boat sold at the permanent hearing and given Robyn another one-half interest in the pontoon boat.
¶ 27. The purpose of the chancellor's order following the temporary hearing was to mitigate Robyn's lack of income. That order was a mechanism for Robyn to receive some money on a temporary basis until this matter could be heard on the merits. Kenneth admitted that he did not sell the pontoon boat. Kenneth said that he understood the chancellor's order to require him to pay Robyn $200 per week up to $4,000. The pontoon boat only came into play because it was the only unencumbered property and the judge told Kenneth that even if he had to sell the boat, to do so and pay the money. The chancellor's order appears to be a mandate that Kenneth sell the boat, which Kenneth did not do. Accordingly, the pontoon boat was still a part of the marital estate prior to the resolution of the divorce.
¶ 28. The pontoon boat was acquired during the marriage. Accordingly, it is a marital asset. Hemsley, 639 So.2d at 915. The chancellor, applying the Ferguson factors, ordered the pontoon boat sold and the proceeds divided equally between the parties. The chancellor was not manifestly wrong, nor did he abuse his discretion in this ruling.
¶ 29. THE JUDGMENT OF THE ALCORN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.