ISHEE, J„
 

 for the Court.
 

 ¶ 1. Michael and Kathi McDuffie were married on October 21, 1995, and they separated on December 20, 2000. On November 26, 2007, the Chancery Court of Jackson County granted the parties a divorce on the ground of irreconcilable differences. Aggrieved by the judgment, Michael now appeals and asks this Court to consider the following issues:
 
 [1]
 

 I. Whether the chancellor committed manifest error by refusing to allow Michael to amend his bill of complaint for divorce and to withdraw his consent to a divorce based on irreconcilable differences.
 

 II. Whether the chancellor applied the correct legal standard to classify the marital assets as marital or non-marital and abused his discretion in dividing the marital assets according to the
 
 Ferguson
 
 factors.
 

 III. Whether the chancellor erred in failing to honor Michael’s homestead exemption under Mississippi Code Annotated section 85-3-1 (Rev.2008).
 

 
 *688
 
 IV. Whether the chancellor abused his discretion in awarding Kathi attorney’s fees.
 

 V. Whether the chancellor abused his discretion by awarding Michael supervised visitation with his child based on the recommendations of the guardian ad litem.
 

 Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Michael and Kathi were married on October 21, 1995. One child was born of the marriage, Patricia Ann McDuffie, born July 25, 1998. Michael and Kathi separated on December 20, 2000, and they filed for divorce on April 5, 2004, on the ground of irreconcilable differences. Michael later sought to withdraw his consent to the irreconcilable differences divorce on June 5, 2007, because his wife admitted in open court to an adulterous affair. The chancellor denied his request, finding it to be untimely. After a prolonged separation and many setbacks in the process, the parties were granted a divorce based on irreconcilable differences on November 26, 2007.
 

 ¶ 3. The chancellor awarded Kathi paramount legal and physical custody of Patricia and, after considering the guidelines established in
 
 Albright v. Albright,
 
 437 So.2d 1003, 1005 (Miss.1983) and considering the recommendations of the guardian ad litem, awarded Michael supervised visitation with Patricia. The supervised visitation was to occur every other Saturday from 2:00 p.m. to 4:00 p.m. and was to be supervised by Kathi’s mother. The chancellor ordered the parties to report back to the court at a later date to fashion a supervised or graduated visitation schedule for the reunification of Michael with his child. Michael was ordered to pay child support in the amount of $275 per month beginning December 1, 2007. The chancellor also found Michael to be in arrears in his child support obligation in the amount of $3,410 and ordered him to pay an additional fifty dollars per month toward the arrearage until the amount was paid off.
 

 ¶ 4. The chancellor relied on
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994) to determine the proper division of the parties’ marital assets. The chancellor found it impossible to ascertain the exact value of the marital assets, in part because he found that neither party provided credible evidence regarding the value of the property. The chancellor found that the situation was further complicated by the fact that many of the items were no longer useful or that they had been destroyed or disposed of while the case was pending. Ultimately, the chancellor determined that all property was marital property and ordered all personal property to be liquidated and the parties to share in the proceeds. The chancellor ordered that any jointly-titled vehicles be sold and the proceeds to be equally distributed between the parties, with each party being allowed to keep his or her vehicles obtained after the separation.
 

 ¶ 5. As for the marital home, the chancellor noted that it had been destroyed by a fire during the course of the litigation. Therefore, the chancellor directed that the insurance proceeds be used to pay off any indebtedness on the home and that any money remaining be divided equally between the parties. The chancellor awarded neither party alimony. Lastly, the chancellor concluded that Michael was responsible for most of the delays in the case and awarded $5,000 in attorney’s fees to Kathi.
 

 STANDARD OF REVIEW
 

 ¶ 6. An appellate court’s scope of review in domestic relations matters is limited.
 
 *689
 

 Perkins v. Perkins,
 
 787 So.2d 1256, 1260-61(¶ 9) (Miss.2001) (quoting
 
 Montgomery v. Montgomery,
 
 759 So.2d 1238, 1240(¶ 5) (Miss.2000)). This Court will not disturb the findings made by the chancery court “unless the chancellor was ‘manifestly wrong, clearly erroneous or an erroneous legal standard was applied.’ ”
 
 Id.
 

 DISCUSSION
 

 I. Withdrawal of Consent to an Irreconcilable Differences Divorce
 

 ¶ 7. Michael argues that since Kathi admitted in open court to an adulterous affair, the chancellor should have allowed him to withdraw his consent to an irreconcilable differences divorce. Kathi responds that under Mississippi Code Annotated section 93-5-2 (Supp.2008), consent to a divorce on the ground of irreconcilable differences may not be withdrawn by a party without leave of the court after the court has commenced any proceeding, including the hearing of any motion or other matter pertaining thereto.
 

 ¶ 8. The irreconcilable differences statute, Mississippi Code Annotated section 93-5-2(3), provides, in part, that a party’s consent to a divorce on the ground of irreconcilable differences “may not be withdrawn by a party without leave of the court after the court has commenced any proceeding, including the hearing of any motion or other matter pertaining thereto.” Michael and Kathi had previously filed a consent to a divorce based on the grounds of irreconcilable differences on April 5, 2004. Michael later sought to withdraw his consent to the irreconcilable differences divorce on June 5, 2007, more than three years after the original consent to an irreconcilable differences divorce was filed. The chancellor denied Michael’s request to withdraw his consent, finding that the request was untimely in light of all the circumstances and also determining that the marriage was irretrievably broken.
 

 ¶ 9. The divorce had been pending for three years before Michael sought to revoke his consent. There had been hearings on the matter since the parties had given their consent to an irreconcilable differences divorce. Therefore, according to section 93-5-2(3), Michael needed leave of the court to withdraw his consent. Based on the chancellor’s findings, we do not find that the chancellor committed manifest error in denying Michael’s request to withdraw his earlier consent to an irreconcilable differences divorce. This issue is without merit.
 

 II. Classification of the Marital Property and
 
 Ferguson
 
 Factors
 

 ¶ 10. Michael next contends that the chancellor improperly classified some of his separate property as marital property. Michael’s main issue appears to rest with the chancellor’s classification as a marital asset the home that Michael owned before the parties married. Michael argues that the chancellor did not properly consider the fact that he acquired the land and built the home with proceeds he received from a personal injury lawsuit eight years before Kathi moved into the home. He also points out that the property included a large amount of land that could not have been completely converted to familial use. Michael contends that the chancellor improperly found that Kathi had made improvements to the home and contributed to its maintenance and upkeep. Michael also takes issue with the chancellor’s determination that much of the personal property from the marriage was destroyed in the fire that burned down the marital home after the parties had separated. Michael claims that Kathi removed many items of furniture and other personal property from the home before the fire occurred.
 

 
 *690
 
 ¶ 11. In response, Kathi argues that Michael admitted that most of the personal property of the parties had been destroyed by the house fire, were no longer useful, or had been disposed of while the divorce was pending. Kathi contends that the furniture she removed from the home was removed pursuant to a temporary order that granted her use and possession of the furniture in order to provide living arrangements for Patricia. She alleges that Michael sold some personal property which included a utility trailer, a trailer, and a welding machine in violation of previous court orders. With regard to the marital home, Kathi contends that it and the property were converted into a marital asset since they were used for familial purposes. Kathi concludes that Michael has failed to show that the chancery court committed error and the court’s decision should be affirmed.
 

 ¶ 12. This Court recognizes that marital property generally includes any and all property acquired during the marriage and that such property is subject to equitable distribution.
 
 McKnight v. McKnight,
 
 951 So.2d 594, 596(6) (Miss.Ct.App.2007) (quoting
 
 A & L, Inc. v. Grant-ham,
 
 747 So.2d 832, 838(18) (Miss.1999)). However, “non-marital assets may be converted into marital assets if they are commingled with marital assets or used for familial purposes, absent an agreement to the contrary.”
 
 A & L, Inc.,
 
 747 So.2d at 838(18) (citing
 
 Heigle v. Heigle
 
 654 So.2d 895, 897 (Miss.1995)).
 

 ¶ 13. A chancellor need not divide the property equally in order to achieve an equitable distribution.
 
 McKnight,
 
 951 So.2d at 596(¶6) (quoting
 
 Humphries v. Humphries,
 
 904 So.2d 192, 198(24) (Miss.Ct.App.2005)). “The matter is within the chancellor’s discretion, as he has all equities and relevant circumstances in mind and is in the best position to decide such matters.”
 
 Id.
 
 “When this Court reviews a chancellor’s judgment of property division, we ‘are to review the judgment to ensure that the chancellor followed the appropriate standards and did not abuse his discretion.’”
 
 Id.
 
 (quoting
 
 Wells v. Wells,
 
 800 So.2d 1239, 1243(8) (Miss.Ct.App.2001)). “The polestar consideration in the marital property division process is fairness.”
 
 Herron v. Herron,
 
 936 So.2d 956, 959(5) (Miss.Ct.App.2006) (citing
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 929 (Miss.1994)).
 

 ¶ 14. Ultimately, the chancellor determined that all property was marital property. In dividing marital assets, the chancellor properly took into account the
 
 Ferguson
 
 factors; however, he determined that neither party provided credible evidence regarding the value of the personal property items. The chancellor further noted that many of the personal property items were no longer useful, had been destroyed by fire, or had been disposed of during the three years that the case had been pending. Accordingly, the chancellor found it impossible to ascertain the exact value of the marital assets. The chancellor stated that “to avoid any further wasting of the legal system’s valuable resources, this Court will direct personal property to be liquidated and the parties share in the proceeds.” All of the jointly titled vehicles were ordered to be sold and the profits to be split equally between the parties. Each party was awarded all the personal property in his or her possession. Essentially, the chancellor determined “the award of personal property to be of equal value since neither party provided credible values of personal property.”
 

 ¶ 15. With regard to the division of personal property, we do not find that the chancellor erred in his property division of the assets. The chancellor, in his ruling, recognized that the prolonged litigation
 
 *691
 
 caused much of the personal property to lose value, and the subsequent fire, which destroyed the former marital home, also destroyed much of the personal property. We find that the chancellor did not abuse his discretion classifying and dividing the parties’ personal property.
 

 ¶ 16. As for the marital home, the chancellor noted that Kathi and Michael shared the home during their marriage and found that it was converted by familial use to marital property. The chancellor found that both parties used the property for the benefit of the marriage and both parties made improvements to the property. The chancellor acknowledged that the marital home had been destroyed by fire; therefore, he directed that the insurance proceeds be used to pay off the outstanding mortgage and that any remaining proceeds be split equally between the parties. Additionally, the chancellor noted that Michael received almost $30,000 “over and above the $51,295.00 in marital debt” as a result of refinancing the marital home. The chancellor found that this was “adequate compensation for any pre-marital interest in the marital domicile.... ”
 

 ¶ 17. From the record before us, we cannot find that the chancellor erred in his determination that the home shared by the parties during the marriage was converted to marital property. It was brought into the marriage by Michael, but it was converted to a marital asset because it was used by the family. We find no abuse of discretion in the chancellor’s ruling that the home was a marital asset. This issue is without merit.
 

 III. Michael’s Homestead Exemption Under Mississippi Code Annotated Section 85-3-21
 

 ¶ 18. After reviewing Michael’s pro se brief, we are left in the dark as to what his actual argument is concerning this issue and as to what relief he seeks. According to the heading of his appellate brief on this issue, Michael asks: “Whether the chancellor exercise[d] proper discretion in not honoring Appellant[’s] homestead exemption pursuant to Miss.Code Ann. [section] 85-3-21.” While his argument is unclear, it appears Michael contends that since his wife abandoned the marital home, she should be prevented from claiming a homestead exemption. Michael claims that Kathi petitioned the court for partition of the marital property; therefore, she lost any homestead rights she had in the property.
 

 ¶ 19. Kathi argues that she was temporarily awarded use and possession of the home upon the parties’ initial separation. She notes that she only left the home because Michael broke into it. This is supported by an order entered November 6, 2001, which found Michael in contempt for breaking into the former marital home, of which Kathi had been granted exclusive use and possession. Further, Kathi claims she demonstrated her interest in claiming the marital property when she asserted that it was a marital asset in her pleadings and sought temporary use of the home. In addition, Kathi argues that the homestead issue raised by Michael is moot because the chancellor did not partition the property; the chancellor determined each party’s interest pursuant to the divorce. Also, the marital home was destroyed by fire; the mortgage was satisfied with insurance proceeds; and there were no outstanding liens on the property in question.
 

 ¶ 20. Upon review, we find no mention in the chancellor’s judgment of any right to the homestead exemption. Michael’s argument regarding this issue is difficult to follow, and it does not appear to be supported by relevant case law. The chancellor found the home in question to be a marital asset and divided it equally between the two parties. Kathi did not
 
 *692
 
 file a claim to partition the property as Michael claims; the chancellor divided it as part of the division of marital assets. Further, the home was destroyed by fire and the parties received insurance
 
 money
 
 to satisfy the outstanding debt on the home, which was split between them. As such, no home remained on which either party could claim a homestead exemption. We find that this issue is without merit.
 

 IV. Attorney’s Fees
 

 ¶21. Michael argues that Kathi did not demonstrate an inability to pay her attorney’s fees; therefore, the chancellor erred in awarding her attorney’s fees. Michael also argues that he paid money directly to Kathi’s attorney, but those payments were not reflected in Kathi’s award of attorney’s fees. He also argues that Kathi should be required to pay the second guardian ad litem’s fees, since he paid the first guardian ad litem’s fees.
 

 ¶ 22. Kathi responds that she is entitled to attorney’s fees because Michael was in arrears in his child support obligation in the amount of $3,410 and because Michael deliberately extended the litigation for the purpose of harassment and delay. Kathi points out that Michael was found to be in contempt of court for failure to pay child support, and she sought attorney’s fees as a result. Further, Kathi contends she expended far more on attorney’s fees than the $5,000 she was awarded. Kathi argues that she was forced to bring action against Michael for the payment of child support because of his actions and that Michael admitted he was delinquent in child support payments. Therefore, she argues that the chancellor did not err in awarding her attorney’s fees. Kathi points out that “[i]t is within the chancellor’s discretion to award attorneys fees, in a divorce action, in spite of a spouse’s ability to pay, where additional attorney’s fees are incurred as a result of the opposing spouse’s fraudulent conveyance of marital property.”
 
 A & L, Inc.,
 
 747 So.2d at 845(60).
 

 ¶ 23. “[I]n a contempt action involving unpaid child support, a prima facie case is achieved when the party entitled to receive child support introduces evidence that the party required to pay the support has failed to do so.”
 
 R.K. v. J.K.,
 
 946 So.2d 764, 777-78(40) (Miss.2007) (citing
 
 Lahmann v. Hallmon,
 
 722 So.2d 614, 620(¶ 19) (Miss.1998)). The party who failed to pay child support must then show a defense by clear and convincing proof.
 
 Id.
 
 Here, Michael admitted at trial that he was in arrears in his child support payments. As such, a prima facie case was made against him for contempt for failure to pay child' support. Further, “[c]on-tempt matters are committed to the substantial discretion of the trial court which, by institutional circumstances and both temporal and visual proximity, is infinitely more competent to decide the matters than we are.”
 
 Elliott v. Rogers,
 
 775 So.2d 1285, 1290(22) (Miss.Ct.App.2000) (quoting
 
 Morreale v. Morreale,
 
 646 So.2d 1264,1267 (Miss.1994)). In addition, “even where there is no specific statutory authority for imposing sanctions, courts have an inherent power to protect the integrity of their processes, and may impose sanctions in order to do so.”
 
 Selleck v. S.F. Cockrell Trucking, Inc.,
 
 517 So.2d 558, 560 (Miss.1987) (citing
 
 Ladner v. Ladner,
 
 436 So.2d 1366, 1370 (Miss.1983)). Most notably, “where a party’s intentional misconduct causes the opposing party to expend time and money needlessly, then attorney’s fees and expenses should be awarded to the wronged party.”
 
 Id.
 

 ¶ 24. This Court finds it necessary to reiterate the chancellor’s findings regarding the prolonged litigation between these parties. The chancellor noted in his judgment that “this case is a textbook example of a litigant exhausting the patience of the
 
 *693
 
 court. [Michael’s] actions throughout the course of this litigation have prolonged this litigation well beyond the time necessary to complete the litigation of these issues .... [Michael] has been successful in delaying this matter on numerous occasions.” We find no abuse of discretion with the chancellor’s judgment and find that this issue is without merit.
 

 Y. Supervised Visitation
 

 ¶ 25. Lastly, Michael takes issue with the chancellor’s decision to award him supervised visitation of his daughter. Michael argues that the guardian ad litem’s report was replete with inaccuracies. He refutes the report of alleged child molestation, arguing he never molested a minor child named Simon,
 
 [2]
 
 and he points out that charges were never filed against him regarding that incident. Michael argues that the Department of Human Services concluded that the molestation charges were unsubstantiated. Michael also takes issue with the fact that the guardian ad litem overlooked Kathi’s adultery and the fact that she shared a room with her boyfriend in the same house with Patricia.
 

 ¶ 26. Kathi argues that the chancellor’s decision to award Michael supervised visitation with Patricia was correct. Kathi contends that Michael admitted that he had drug and alcohol problems that resulted in his intoxication. Kathi points out that Michael tested positive for crystal meth after a court-ordered screening in 2001. Since that time, Michael has failed to obtain another drug test to substantiate his claim he no longer uses drugs, despite the guardian ad litem’s recommendation to do so. Kathi argues it would be against the best interest of Patricia to allow her to be exposed to possible drug use. Further, Kathi points out that Michael made improper sexual advances toward a minor child, and she claims that the allegations against Michael have not been dismissed. Kathi argues that the guardian ad litem did a complete investigation and recommended that Michael undergo counseling, attend FOCIS,
 
 [3]
 
 and submit to hair follicle drug screens in order to reestablish a relationship with his daughter, and at the time of trial, Michael had not complied with any of the recommendations. Kathi concludes that the chancellor conducted his own analysis and made his own findings based on all the evidence and did not simply adopt the findings of the guardian ad litem.
 

 ¶ 27. This court recognizes that “the best interest of the child is the main concern in determining visitation.”
 
 Rogers v. Morin,
 
 791 So.2d 815, 820(23) (Miss.2001) (citing
 
 Dunn v. Dunn,
 
 609 So.2d 1277, 1286 (Miss.1992)). “[T]he chancellor has discretion to fashion a visitation order to suit the child’s best interest.”
 
 Marshall v. Harris,
 
 981 So.2d 345, 350(23) (Miss.Ct.App.2008) (citing
 
 Horn v. Horn,
 
 909 So.2d 1151, 1162(39) (Miss.Ct. App.2005)). An appellate court will afford great deference to the chancellor’s visitation decision.
 
 Horn,
 
 909 So.2d at 1161— 62(38). Here, the guardian ad litem presented an extensive report regarding the best interest of Patricia. The chancellor considered this information and the evidence presented at trial in light of the factors set out in
 
 Albright.
 

 ¶ 28. The guardian ad litem found that Michael admitted he had problems with
 
 *694
 
 drugs and alcohol, once testing positive for crystal meth during a court-ordered drug test, and the chancellor found that Michael’s explanation regarding the child molestation allegation raised questions regarding his moral fitness. According to Simon, who was eight years old at the time of the incident, Michael was intoxicated one night and turned on a pornographic movie. While the movie was playing, he took the minor into the laundry room. He told Simon that “this is what guys do,” and he put the child’s penis in his mouth. Nothing further happened. The guardian ad litem noted that according to Michael’s version of events, he caught Simon and another child watching a pornographic movie.
 
 [4]
 
 According to Michael, he asked if the boys were interested in “that stuff’ and he allowed them to continue watching the movie and even watched some of it with them before ordering it to be turned off. The guardian ad litem gave more credence to Michael’s version of events because: the child’s version was uncorroborated; there was no evidence of criminal charges; and DHS indicated the findings were unsubstantiated. Ultimately, the guardian ad litem recommended supervised visitation because of Michael’s drug and alcohol issues, questions concerning his moral fitness, and the fact that Michael has had little or no contact with his very young daughter for some time. Based on the facts of this case, we find no error with the chancellor’s order granting Michael supervised visitation with Patricia. The chancellor properly took into account that the child’s best interests was the main concern and fashioned an appropriate visitation order, which provided for the future reunification of Michael with his daughter. Accordingly, we find no abuse of discretion, and we find that this issue is without merit.
 

 ¶ 29. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . This Court has combined some issues for the purpose of judicial economy. In his appellate brief, Michael also asks us to consider whether the chancellor erred in failing to credit him for payments that he made on the marital debt. However, Michael provides no argument for this issue; therefore, we will not address it.
 

 [2]
 

 . To protect the identity of the minor child, this Court has substituted a fictitious name in this opinion.
 

 [3]
 

 . It is not specified, but it seems the guardian ad litem was referring to Focus on Children in Separation, which is a program designed to help prepare divorcing parents and their children for life after separation. The guardian ad litem suggested that Michael, Kathi, and Patricia attend these classes.
 

 [4]
 

 . The GAL reported that Michael caught the children watching a pornographic movie. In Michael's appellate brief, he claims that he caught the children watching
 
 Girls Gone Wild,
 
 which he claims is R-rated, not pornographic.