914 So.2d 193 (2005)
Phyllis Victoria Busby FITZGERALD, Appellant
v.
Michael Lane FITZGERALD, Appellee.
No. 2003-CA-01857-COA.
Court of Appeals of Mississippi.
April 5, 2005.
Rehearing Denied August 2, 2005.
Certiorari Denied November 10, 2005.
*194 H.R. Garner, Hernando, attorney for Appellant.
D. Pace Branan, Hernando, attorney for Appellee.
*195 Before BRIDGES, P.J., GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶ 1. Phyllis Victoria Busby Fitzgerald ("Phyllis") appeals the chancellor's judgment of divorce. She contests the chancellor's equitable distribution of assets, award of alimony, requirement that she sign an income tax return and the award of an income tax deduction. We find reversible error. We affirm in part and reverse and remand in part.

FACTS
¶ 2. Michael Lane Fitzgerald ("Michael") and Phyllis began dating in September or October of 1993. Phyllis became pregnant in December. They were married on January 21, 1994.
¶ 3. In September of 1994, the parties' only child was born. They agreed that Phyllis would quit her job to stay home with the child until he was in school.
¶ 4. At the time of their marriage, Michael and Phyllis were both employed. Michael was a self-employed furniture sales representative. His income averaged over $100,000 per year. Phyllis was in sales at MobileCom, and she made $35,000 per year.
¶ 5. Prior to his marriage to Phyllis, Michael and his first wife owed the Internal Revenue Service approximately $100,000 in back taxes as a result of a previous failed business venture. Additionally, Michael and his first wife each owned a one-half interest in two rental houses in Desoto County, Mississippi, which were purchased prior to Michael and Phyllis's marriage.
¶ 6. In March of 1995, Michael and Phyllis purchased a marital home in Desoto County, Mississippi for $160,000. They borrowed $128,000 from People's Bank and $16,000 from the seller. In September of 1997, the parties borrowed approximately $64,274 from People's Bank against their mortgage in order for Michael to pay the back taxes that he, together with his first wife, owed the IRS. In December of 1997, the parties refinanced the marital home in the amount of $187,500 in order to obtain a lower interest rate and to consolidate the People's Bank loan. In March of 2001, the parties took out a line of credit in the amount of $15,000, which was secured by a second mortgage on the parties home. At the time of trial, the parties owed $179,000 on the marital home.
¶ 7. In March of 2002, Phyllis filed for divorce on the grounds of adultery. The parties continued to live together in the marital home until September, when Phyllis and the parties' minor child moved to an apartment. Thereafter, Michael continued paying Phyllis's car note and insurance, continued to provide health insurance for Phyllis and to pay their uncovered medical bills, continued to pay the mortgage and household expenses on the marital home, and provided $1,030 per month in child support.
¶ 8. The trial on this matter began on May 22, 2003, and continued for two days. Due to the pending contract for sale of the marital home, the chancellor continued the matter to July 15, 2003. The chancellor stated that he expected testimony at that time regarding the status of the marital home, the employment status of Phyllis, and each parties' current financial status. The chancellor entered a temporary order. The chancellor further ordered each party to pay $10,000 towards their attorney's fees and impressed an equitable lien on the proceeds from the sale of the parties' marital home in that amount.
¶ 9. On July 15, 2003, the hearing reconvened. Phyllis testified that despite the chancellor's suggestion, she had not acquired *196 a job since the last hearing. The marital home had been sold and there remained $25,738.40 in proceeds after satisfaction of the first and second mortgage, the line of credit secured by the home, closing costs, and payment of $10,000 towards each party's attorney's fees as directed by the chancellor in his temporary order. Both parties' updated financial statements were admitted into evidence, and a copy of the parties' joint 2002 federal and state income tax returns, which Phyllis refused to sign, were also admitted into evidence. Michael testified that although he had made some payments, they still owed $11,372 in federal taxes and $3,967 in state taxes.
¶ 10. At the close of the hearing, the chancellor issued his findings of fact and conclusions of law in an oral opinion from the bench. The opinion was subsequently transcribed by the court reporter. The chancellor granted Phyllis a divorce based on adultery since Michael admitted to the adultery. Phyllis was granted paramount physical custody of the parties minor child, and Michael received standard Farese visitation. The chancellor ordered Michael to pay $1,030 per month in child support and granted the income tax child dependency exemption to Michael until such time that Phyllis could show an income of over $50,000 per year. The chancellor awarded Phyllis periodic alimony in the amount of $500 per month.
¶ 11. As to the personal property, the chancellor awarded all items listed under "Phyllis Has" to Phyllis and all items listed under "Mike Has" to Michael. As for items listed under "Other Property," the chancellor determined that there was not enough evidence for him to make a proper Ferguson evaluation and therefore awarded items 1-4, 9-12 and 18-19 to Michael and items 5-8 and 13-17 to Phyllis.
¶ 12. The chancellor found Michael's one-half interest in the two rental homes he owned with his first wife to be pre-marital assets, except for any appreciation accumulated during the marriage. However, since there was no testimony as to any appreciation accumulated or its value, the chancellor awarded Michael full interest in the rental homes.
¶ 13. The chancellor held that the Paine Webber SEP account and the Paine Webber IRA account, which were both opened and maintained during the marriage, were marital property. He added the accounts together and rounded the value of the accounts to $85,000. The chancellor further determined that the $25,738.40 in proceeds from the sale of the marital home was a marital asset. He determined that, while Phyllis had the ability to pay her own attorney's fees and did not meet the McKee factors, she was entitled to a partial award of attorney's fees based on Michael's admission of adultery. As a result, the chancellor awarded Phyllis $10,738.40 in attorney's fees to be paid from the proceeds of the sale of the marital home held in escrow. The chancellor awarded Phyllis the remaining $15,000 in proceeds from the sale of the marital home and $35,000 out of the $85,000 in the Paine Webber accounts. Michael was awarded the remaining $50,000 in the Paine Webber accounts.
¶ 14. The chancellor determined that the 2002 federal and state income taxes in the amount of $15,339 was a marital debt and directed Phyllis to sign the 2002 joint tax return as presented to her at trial. Additionally, Phyllis was ordered to pay 10% of the total amount due and Michael was ordered to pay the remaining 90%.
¶ 15. A decree of divorce was entered on July 18, 2003. Phyllis filed a motion for reconsideration or new trial, which was denied by the chancellor. On appeal, *197 Phyllis asserts that the chancellor (1) failed to equitably divide the marital assets and debts, (2) failed to award her the appropriate amount of alimony, (3) erred in compelling her to execute the parties' joint 2002 income tax returns and be responsible for a portion of the debt, and (4) erred in awarding Michael the income tax child dependency exemption.

STANDARD OF REVIEW
¶ 16. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Sanderson v. Sanderson, 824 So.2d 623, 625-26(¶ 8) (Miss.2002).

ANALYSIS

I. Did the trial court err in its division of the marital assets and debts?
¶ 17. Phyllis argues the chancellor failed to equitably divide the assets and debts of the parties' marriage. In making an equitable distribution of marital assets and debts, the chancellor must first classify each asset as marital or non-marital pursuant to Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994). Any and all assets acquired or accumulated during the marriage are marital property and are subject to equitable division unless it is shown that such assets are attributable to either party's separate estate prior to or outside the marriage. Id. at 914.
¶ 18. Once a determination of marital and non-marital property is made, the chancellor must equitably divide all marital property pursuant to the guidelines listed in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). However, not every case requires consideration of and findings as to all eight of the factors, and a chancellor may consider only the factors which are applicable to the particular asset at issue. Glass v. Glass, 857 So.2d 786, 790(¶ 10) (Miss.Ct.App.2003).
¶ 19. Phyllis alleges the chancellor erred in finding that Michael's one-half interest in the two rental houses he owned with his first wife was non-marital property. However, the record reflects that Michael's interest in the rental houses was acquired prior to his marriage to Phyllis. Michael did not receive any income from the rental houses during the marriage, nor did Phyllis present evidence as to any appreciation which accrued on the rental houses since the date of the marriage. Therefore, the chancellor was correct in classifying the two rental houses as non-marital property.
¶ 20. Phyllis next argues the chancellor failed to consider the $64,274 the parties borrowed to pay off a pre-marital debt owed by Michael. Michael testified that he and his first wife owed $100,000 in back income taxes to the IRS due to a failed business venture. He further stated that he and Phyllis borrowed $64,274 from People's Bank in order to satisfy this IRS debt. Phyllis asserts that the chancellor erred in failing to classify the $64,274 as a non-marital debt. We agree.
¶ 21. Although the $64,274 was borrowed while the Fitzgerald's were married, not all debts incurred during a marriage are marital debts. Whether a debt is classified as marital or separate depends on who benefitted from the debt. Gamer v. Gamer, 16 Va.App. 335, 429 S.E.2d 618, 623 (1993). The $64,274 was used to pay off a debt incurred by Michael before he was married to Phyllis. Phyllis did not benefit from the loan and thus the $64,274 debt should have been classified as non-marital.
¶ 22. In the property distribution, the chancellor failed to classify the $64,274 as *198 a non-marital debt. Instead, he allocated this debt to Phyllis who had no interest in either the failed business venture which led to the debt or the debt itself. As a result of allocating this debt to Phyllis, Michael was unjustly enriched as he had a non-marital debt reduced with the use of marital funds. Upon review, we find the chancellor erred in his distribution of marital assets and debts. Therefore, we reverse and remand for the chancellor to further consider the proper equitable division of the parties' property.
¶ 23. Phyllis also argues the chancellor erred in ordering that a portion of her attorney's fees be paid from the proceeds of the marital home held in escrow. The chancellor awarded each party $10,000 from the proceeds of the sale of the marital home to be applied to their attorney's fees. The chancellor then awarded Phyllis an additional $10,738.40 from the proceeds of the sale of the marital home to be applied to her attorney's fees based upon Michael's admission of adultery. Phyllis contends that the chancellor essentially ordered her to pay her own attorney's fees out of the marital property, letting Michael off the hook for payment.
¶ 24. The determination of attorney's fees is a matter largely within the sound discretion of the chancellor. Magee v. Magee, 661 So.2d 1117, 1127 (Miss.1995). We are reluctant to disturb a chancellor's decision to award attorney's fees and the amount awarded. Id. Upon review, we find the chancellor did not err in ordering that a portion of Phyllis's attorney's fees be paid from the proceeds of the marital home.

II. Did the trial court err in the amount of alimony awarded to Phyllis?
¶ 25. The chancellor awarded Phyllis $500 per month in periodic alimony. Phyllis claims the chancellor failed to award an appropriate amount of alimony based on the evidence presented.
¶ 26. In Lauro v. Lauro, 847 So.2d 843, 850(¶ 17) (Miss.2003), the Mississippi Supreme Court determined that since the case was remanded for further consideration of equitable division, the chancellor should be "instructed to revisit the awards of alimony and child support after [s]he has properly classified and divided the marital assets." On remand, the chancellor will have all tools of marital dissolution available: equitable division, lump sum alimony, periodic alimony and child support. The chancellor should not construe our opinion as to favor one over the other. Indeed, the chancellor may correct the error by granting an appropriate equitable division of assets, an appropriate award of lump sum alimony, or an appropriate award of periodic alimony, or any combination thereof.
¶ 27. Since proper distribution of the parties' assets and debts may affect the amount of alimony ultimately awarded to Phyllis, we decline to address this issue and, instead, reverse and remand for further findings.

III. Did the trial court err in compelling Phyllis to execute the parties' joint 2002 tax return?
¶ 28. Phyllis argues the chancellor erred in compelling her to execute the parties' joint 2002 tax return and requiring her to be responsible for 10% of the tax deficiency. In support of her argument, Phyllis relies on Banks v. Banks, 648 So.2d 1116, 1128 (Miss.1994), which found that a chancellor erred in finding a wife in contempt for refusing to sign a joint tax return with her ex-husband. However, Phyllis's reliance on Banks is misplaced. *199 In Banks, Ms. Banks had never seen nor signed a joint tax return during the parties marriage. Id. at 1118-19. Here, Phyllis testified that she had seen and signed joint tax returns many times during the marriage without reviewing them. Furthermore, Phyllis had every opportunity to review the figures contained in the tax return. Phyllis failed to ask for a continuance to have the 2002 tax returns reviewed by a CPA of her choice and she failed to present evidence that the tax returns were incorrect. The chancellor was within his discretion in finding that the 2002 tax debt was a marital debt since the parties were married for the full year and both benefitted from the income gained during the full year. Thus, the chancellor correctly required the parties to sign a joint tax return, as the filing of a joint return would benefit both of them and reduce the amount of taxes owed by the married couple.
¶ 29. Nevertheless, since proper distribution of the parties' assets and debts may affect the chancellor's determination that Phyllis is obligated to pay for a portion of the tax deficiency, we decline to address this issue and, instead, reverse and remand for further findings.

IV. Did the trial court err in awarding the income tax child dependency exemption to Michael?
¶ 30. Phyllis argues the chancellor erred in awarding Michael the child dependency exemption for income tax purposes. However, the record indicates that Phyllis was unemployed throughout the marriage and was still unemployed at the time of the chancellor's ruling. Thus, the tax exemption would provide no benefit to Phyllis since she has no income. On the other hand, Michael has a substantial income and, as a result, would benefit significantly from the tax exemption. Thus, the chancellor was correct in awarding the income tax child dependency exemption to Michael.
¶ 31. Phyllis also contends the trial court erred in imposing unreasonable conditions upon her ability to claim the income tax child dependency exemption in the future. However, a chancellor has the authority to require that a custodial parent waive the income tax child dependency exemption in favor of the non-custodial parent. Louk v. Louk, 761 So.2d 878, 883-84(¶ 16) (Miss.2000). Phyllis has the ability to obtain employment and there is nothing in the chancellor's ruling which prohibits Phyllis from seeking a modification of the award at such time that she is gainfully employed and the tax exemption might be valuable to her. Louk, 761 So.2d at 884(¶ 19). While we find that the trial court did not err in awarding the income tax child dependency exemption to Michael, the remand of this case will allow the chancellor to reconsider the award of the child dependency exemption.
¶ 32. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER AND ISHEE, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.