KING, C.J.,
 

 for the Court:
 

 ¶ 1. The Clay County Chancery Court granted a divorce to Georgia M. Walker (Georgia) and R.L. Walker (R.L.) on the ground of irreconcilable differences, divided the marital assets, and awarded alimony to Georgia. Aggrieved, R.L. appeals, raising three issues: (1) whether the chancellor made an equitable division of the marital assets in this cause; (2) whether the chancellor fairly apportioned the indebtedness of the parties; and (3) whether the chancellor erred in ordering R.L. to pay Georgia periodic alimony in the amount of $200 per month. Finding no error, we affirm the chancery court’s judgment.
 

 FACTS
 

 ¶ 2. Georgia and R.L. married on January 1, 1969. After thirty-five years of marriage, the two separated in 2004. One child, Antonio Lamar Walker, was born as a result of the marriage; Antonio, had just turned twenty-one at the time of trial. Although no other children were born to this union, Georgia had a son, Lamar,
 
 [1]
 
 prior to the marriage, who R.L. raised as his own child. There was testimony that R.L. had fathered children with other women during his marriage to Georgia.
 

 ¶ 3. Both Georgia and R.L. worked throughout the entire marriage combining resources to support their family and household. At the time of trial, Georgia, who was sixty-five years old and in fair health, was working as a cook and bus driver for the West Point School District. Also, at the time of trial, R.L., who was fifty-seven years old, had suffered three heart attacks, had a pacemaker, was taking approximately eleven different types of medication a day, and was working as a truck driver. Testimony indicated that R.L., as the primary breadwinner, was primarily responsible for household expenses as his income was higher than Georgia’s; and Georgia was primarily responsible for the household chores, caring for the children, and managing their rental property.
 

 ¶ 4. Georgia testified that one day R.L. came home and told her that he saw Attorney Josh Stevens to file for divorce. After becoming aware that a divorce pleading had not been filed, Georgia filed for a divorce on August 4, 2004, in the Clay County Chancery Court alleging adultery and habitual cruel and inhuman treatment. In her complaint, Georgia asked the court for complete custody of the minor child, child support, continued medical insurance for the child, reasonable attorney’s fees, an equitable division of the marital property, alimony, and possession and control of the marital home.
 

 ¶ 5. On October 14, 2004, the chancellor entered a temporary order which granted
 
 *486
 
 Georgia possession of the marital home and household contents and directed R.L. to pay the monthly mortgage and $400 per month in temporary alimony to Georgia. The chancellor ordered that neither party dispose of any marital property and instructed each to file an affidavit on the issue of emancipation of the minor son. The issues of child custody and child support were to be held in abeyance until receipt of the affidavits. On June 7, 2005, Georgia and R.L. agreed to a divorce on the ground of irreconcilable differences. In the June 7, 2005, pleading styled “Consent,” Georgia and R.L. also agreed to submit to the chancellor certain issues on which they could not agree. Those issues were as follows: (a) child custody and the amount of child support for the minor child; (b) determination of what was the marital estate and an equitable division and distribution of the same, including but not limited to the marital residence, rental properties, retirement and pension accounts, household goods and furnishings and automobiles; (c) the amount of alimony to award; and (d) whether to award attorney’s fees.
 

 ¶ 6. On January 19, 2006, the chancellor heard evidence on the contested issues. On March 9, 2006, the chancellor issued an opinion, which granted a divorce on the ground of irreconcilable differences. In that opinion, the chancellor awarded Georgia the marital home, the vacant lot, the 1993 Cadillac, the 1994 Dodge, her personal property, and her retirement account. The chancellor also directed Georgia to pay her own attorney’s fees and sign all necessary papers giving title to the other vehicles and rental properties to R.L. The chancellor also directed R.L. to refinance the debt on the marital home to give clear title to Georgia and to continue to pay the debt on the Dodge pickup truck until it was paid in full. The chancellor awarded R.L. the rental properties, the 2000 Freightliner truck, the Gooseneck trailer, the 270 John Deere Haycutter, the 1989 GMC Silverado, the 2004 Denali and all other vehicles and trucking equipment, his retirement account, his personal items that were still at the marital home, and the household furnishings that he had inherited from his mother. R.L. was responsible for payment of the debt on the rental properties and his own attorney’s fees. R.L. was ordered to pay periodic alimony of $400 per month and to refinance the rental properties in order to relieve Georgia of any financial obligations associated with these properties.
 

 ¶ 7. Aggrieved, on April 7, 2006, R.L. filed a motion for reconsideration of the chancellor’s judgment. On June 2, 2006, the chancellor reopened the case for submission of Georgia’s retirement account balance, which she had failed to submit to the chancellor prior to the ruling on March 9, 2006, and any and all of R.L. financial statements used to obtain financing from banking institutions for the purchase of trucking equipment and rental properties. On August 15, 2006, a hearing on the motion for reconsideration was held, and this information was received by the court. During the hearing, Georgia’s retirement account statement from the Mississippi Public Employment Retirement System (PERS) and R.L.’s 2005 income tax return were introduced. The chancellor heard testimony from R.L.’s witness Brenda Wofford, the H & R Block senior tax advisor in West Point, Mississippi, who discussed R.L.’s self-employment tax returns. Allegedly, the financial statements used in R.L.’s applications to obtain financing from banking institutions for the purpose of the rental houses did not exist. After reviewing the additional evidence and testimony, the chancellor, on December 22, 2006, entered an order granting the motion for reconsideration in part. In
 
 *487
 
 that order, the chancellor made the following adjustments: R.L. was directed to pay $200 per month in periodic alimony to Georgia, and Georgia was awarded her retirement account. A final judgment was filed on May 29, 2007.
 

 STANDARD OF REVIEW
 

 ¶ 8. “The Court employs a limited standard of review on appeals from chancery court.”
 
 Reddell v. Reddell,
 
 696 So.2d 287, 288 (Miss.1997). “If substantial credible evidence supports the chancellor’s decision, it will be affirmed.”
 
 Id.
 
 “This Court will not disturb the findings of a[c]hancel-lor unless the [cjhancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.”
 
 Bell v. Parker,
 
 563 So.2d 594, 596-97 (Miss.1990).
 

 ANALYSIS
 

 ¶ 9. Although R.L. presents three assignments of error, because issues one and two raised by R.L. involve the division of marital property, they will be discussed together.
 

 I. Division of Marital Assets
 

 ¶ 10. R.L. argues that the division of the martial property was not equitable, and the marital debt was not fairly apportioned. R.L. claims that their combined net worth at the time of trial was $34,968.29. R.L. contends that when the chancellor divided the marital property, Georgia had a positive net worth of $115,899.29, and he was left with a negative net worth of -$80,931, with no debt apportioned to Georgia. R.L. argues that a fair division of the marital property should have left an approximately equal net worth for him and Georgia in the amount of $17,488.14.
 

 ¶ 11. R.L. asserts that Georgia received a furnished home and the Dodge pickup truck debt free. R.L. contends that because a part of the vacant lot had been deeded to Georgia’s son, Lamar, prior to these proceedings, this lot should be charged against Georgia’s share. In addition, R.L. claims that because the Dodge pickup truck is an oversized pickup truck with double rear wheels used to pull the gooseneck trailer he received, the chancellor should not have awarded Georgia the Dodge pickup truck.
 

 ¶ 12. In determining equitable distribution of marital assets and debts, the chancellor must first classify each asset as marital or non-marital.
 
 Hemsley v. Hemsley,
 
 639 So.2d 909, 915 (Miss.1994). “[N]ot all debts incurred during a marriage are marital debts.”
 
 Fitzgerald v. Fitzgerald,
 
 914 So.2d 193, 197 (¶ 21) (Miss.Ct.App.2005). “Whether a debt is classified as marital or separate depends on who benefitted from the debt.”
 
 Id.
 
 Once that determination is made, the chancellor must evaluate the equitable division of all marital property pursuant to the guidelines listed in
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994). An equitable distribution does not mean that the chancellor is required to divide the property equally.
 
 Drumright v. Drumright,
 
 812 So.2d 1021, 1026 (¶ 14) (Miss.Ct.App.2001). Equitable division of marital property is left to the discretion and conscience of the chancellor, “having in mind all the equities and other relevant facts and circumstances.”
 
 Humphries v. Humphries,
 
 904 So.2d 192, 198 (¶ 24) (Miss.Ct.App.2005). “Fairness is the prevailing guideline in marital division.”
 
 Id.
 
 at 198-99 (¶ 24).
 

 ¶ 13. “When reviewing a chancellor’s judgment in property division we are not to conduct a
 
 Ferguson
 
 analysis anew, but are to review the judgment to ensure that the chancellor followed the appropriate standards and did not abuse his discre
 
 *488
 
 tion.”
 
 Jackson v. Jackson,
 
 922 So.2d 53, 59 (¶ 16) (Miss.Ct.App.2006).
 

 ¶ 14. In this case, the chancellor considered all the evidence against the
 
 Ferguson
 
 factors. We will address them below.
 

 (A)Substantial contribution to the accumulation of the property
 

 ¶ 15. The chancellor opined that for thirty-five years R.L. and Georgia had worked as a family unit, and both parties had contributed equally to the accumulation of the marital assets. The chancellor stated that although R.L. had been the primary breadwinner, Georgia had made significant contributions. In addition to being employed, Georgia was responsible for taking care of the house. Although R.L. testified that Georgia had been unfaithful, the chancellor appears to have found Georgia’s denial of the accusation credible. On the other hand, the chancellor noted that there was in fact evidence to support the fact that R.L. had fathered several children by other women during the course of his marriage to Georgia and was in fact living with another woman at the time of the divorce proceeding.
 

 (B) The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise
 

 ¶ 16. The chancellor found no evidence regarding this factor.
 

 (C) The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vi-vos gift by or to an individual spouse
 

 ¶ 17. The chancellor opined that the only evidence offered as to assets not ordinarily subject to such distribution was personal property R.L. had acquired from his mother. Georgia agreed to let R.L. have the items he had inherited from his mother.
 

 (D)The market value and the
 

 emotional value of the assets subject to distribution
 

 ¶ 18. As to the real property, the chancellor opined that although the parties’ testimonies differed as to the value of the marital home and other real property, Georgia introduced into evidence real-property appraisals from the Clay County Tax Assessor’s Office. The chancellor accepted the values placed on the property from the tax assessor because there was no other credible evidence before the court. The marital home was valued at $61,881. At some point, the marital home was debt free, but because the parties purchased a Freightliner truck for R.L.’s use in his business, the marital home had a debt of $57,000, leaving equity of $4,881. The vacant lot was valued at $1,500. Both parties testified that when they purchased the lot it was two acres, but they subsequently deeded an acre to Georgia’s son, Lamar, as a gift. The rental house was valued at $34,210, and the balance of the mortgage on the rental house was $28,414, leaving equity of $5,796. The duplex was valued at $37,290, but it carried a mortgage of $50,000. The court ruled that all the monthly income produced from the rental properties serviced the associated debt. R.L.’s financial statement also indicated that his guns were worth $1,200, the gooseneck trailer was worth $3,000, the haycutter was worth $2,000, and the front-end loader was worth $2,500. Although neither party provided documentation as to the value of the household furnishings, R.L.’s 8.05 financial statement approximated the value of the household furnishings at $15,000, while Georgia’s 8.05 financial statement approximated the value at $900.
 
 *489
 
 The chancellor found it difficult to accept that after thirty-five years of marriage, the parties’ household furnishings were valued at $15,000, unless the parties had purchased antiques, and there was no testimony as to such purchases.
 

 (E) Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution
 

 ¶ 19. The chancellor opined that there was no evidence regarding this factor.
 

 (F) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties
 

 ¶20. The chancellor recognized that when there is friction between the parties, the marital property should be equitably divided to eliminate periodic alimony payments. In this case, the chancellor determined that there was animosity between the parties; however, it was not possible to provide for Georgia if periodic alimony was eliminated. Therefore, the chancellor sought to minimize payments and, thus, minimize future friction.
 

 (G) The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity
 

 ¶ 21. The evidence indicated that both parties were employed. The evidence also showed that despite the fact that Georgia had reached the age of retirement and received social security benefits, she continued to work full time. The chancellor opined that the amendment to R.L.’s 8.05 financial statement regarding his gross monthly income (amended to $2,000 per month as opposed to $9,000 per month) was not credible, and that despite R.L.’s suffering from poor health, his business continued to gross $150,000 per year.
 

 (H)Any other factor which in equity should be considered
 

 ¶22. The chancellor found that there was no evidence regarding this factor.
 

 ¶23. The evidence indicates that although R.L. had been the primary breadwinner, Georgia had made significant contributions to the marriage. The supreme court has recognized that “marital partners can be equal contributors whether or not they both are at work in the marketplace.”
 
 Hemsley,
 
 639 So.2d at 915. Georgia testified that she has paid on R.L.’s medical bills, especially when she was threatened by the collection agency, and paid the household bills at the marital home for over a year because R.L. refused to pay any household bills despite the fact he was paying the household bills where he lived with another woman. Georgia stated that although R.L. was living with another woman, she continued to cook for R.L., get his medicine, and wash his clothes whenever he came to the marital home. Georgia also testified that she was involved in the management of the rental properties until R.L. took those responsibilities away.
 

 ¶ 24. Despite the testimony from Wof-ford as to how income taxes affect R.L., who was self-employed, the chancellor still found that R.L.’s testimony that his gross monthly income was only $2,000 per month not to be credible. The chancellor opined that despite his poor health, R.L. had continued to work, and his business had grossed more than $150,000 per year. The chancellor stated that although R.L. and Georgia obtained a home-equity loan to purchase the Freightliner truck, the truck was used solely for the business, and the debt of the truck could be paid by the business. The chancellor noted that the remaining liabilities were for three other vehicles, which were solely used by R.L.
 
 *490
 
 Lastly, in the order partially granting the motion for reconsideration, the chancellor made an adjustment to the amount of periodic alimony that R.L. would be required to pay.
 

 ¶ 25. Reviewing the chancellor’s judgment, according to
 
 Ferguson,
 
 we find that the chancellor did not abuse her discretion. Therefore, we affirm the chancellor’s judgment.
 

 II. Periodic Alimony
 

 ¶ 26. Initially, the chancellor ordered R.L. to pay $400 in periodic alimony to Georgia; however, in the order partially granting R.L.’s motion for reconsideration, the chancellor decreased the payment of periodic alimony to $200 per month. R.L. argues that his income was not sufficient to justify periodic alimony. R.L. asserts that the chancellor had no proof to conclude that his amended 8.05 financial statement reflecting a gross monthly income of $2,000 was not credible or a misrepresentation to the court. R.L. also asserts that he has approximately $50,000 worth of medical bills.
 

 ¶ 27. “The purpose of alimony is not punitive, but instead, is designed to assist the spouse in meeting his or her reasonable needs while transitioning into a new life.”
 
 Faerber v. Faerber,
 
 13 So.3d 853, 862-63 (¶ 36) (Miss.Ct.App.2009). Alimony should be considered only after equitable division of the marital assets.
 
 Id.
 
 Periodic alimony should only be considered if the chancellor determines that a spouse has suffered a disparity of income and standard of living following the equitable division of marital assets.
 
 Carroll v. Carroll,
 
 976 So.2d 880, 886 (¶ 12) (Miss.Ct.App.2007).
 

 ¶ 28. Georgia’s 8.05 financial statement reflected that she had a net monthly income of $2,077 per month and that her monthly expenses included residential maintenance, food and household supplies, household utilities, laundry, clothing, automobile gas and oil, automobile insurance, church donations, newspaper/magazines, yard expenses, credit card payments, and food and clothing allowances for her son. Georgia’s list of monthly expenses did not include an amount for property taxes and insurance, medical and dental insurance and expenses, entertainment, transportation other than vehicle, incidentals, automobile repairs, pest control, and charitable donations. R.L.’s initial 8.05 financial statement reflected that he earned a gross monthly income of $9,000. R.L. testified that after he realized that he had failed to consider the business expenses and rental property expenses, his monthly gross income was actually $2,000. The chancellor stated that there was no credible evidence that R.L. had $50,000 worth of medical bills, or that the rental properties did not self-service the debt owed. Therefore, the chancellor opined that R.L. should not have any monthly payments out of his income for the rental properties.
 

 ¶ 29. In this case, the chancellor held that equitable division of the marital assets did not adequately provide for the future income needs of Georgia.. In accordance with
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278 (Miss.1993), in making a determination to award alimony, the chancellor considered the following factors: health and age of the parties, income and earning capacity and needs of each party, the obligations and assets of each party, the length of the marriage, the standard of living of the parties during the marriage and at the time of separation, and fault or misconduct. Considering the
 
 Armstrong factors
 
 that the chancellor considered in her decision, we find no indication that the chancellor’s findings constitute manifest error.
 

 
 *491
 

 (A) Health and age of the parties
 

 ¶ 30. Georgia, who was sixty-five years old at the time of trial, was found to be in fair health. R.L., who was fifty-seven years old at the time of trial, has suffered three heart attacks and has a pacemaker. R.L. testified that he also suffers from arthritis, hypertension, and high cholesterol. R.L. asserted that despite his health conditions, he continues to make long trips driving trucks.
 

 (B) Income and earning capacitg of each party
 

 ¶ 31. The record supports the chancellor’s finding that a disparity in income exists between the parties. Georgia’s 8.05 financial statement indicates that with her social security benefits and job as a cook and bus driver, she averages approximately $2,077 before taxes. However, when Georgia retires, she will receive only $369 per month from retirement. R.L.’s 2004 income tax return indicates that his yearly income as a truck driver was $156,646.
 

 (C)Needs of each party
 

 ¶ 32. The record does not reflect that the parties have any special needs.
 

 (D) Obligations and assets of each party
 

 ¶ 33. Georgia’s 8.05 financial statement reflects a net monthly income of $1,844 with monthly expenses amounting to $1,130. R.L.’s 8.05 financial statement indicates a net monthly income of $9,000 with monthly expenses totaling $6,210.66.
 

 (E) Length of the marriage
 

 ¶ 34. At the time of the divorce proceeding, the couple had been married for thirty-five years.
 

 (F)Standard of living both during the marriage and at the time of separation
 

 ¶ 35. The facts indicate that the parties maintained a good standard of living. Georgia and R.L. owned their home, owned rental properties, and paid their bills together. Although R.L.’s income was used primarily to support household expenses, the parties worked as a unit to support their family and business. At the time of separation, R.L. was living with another woman, who drove one of his vehicles, which he made installment payments on. However, even during the separation, R.L. would periodically come to the marital home, and Georgia would cook for him, do his laundry, pay his medical bills, and get his medicine; but R.L. refused to assist with the household expenses. Georgia’s income alone was responsible for the household expenses and maintenance during the time of the parties’ separation.
 

 (G)Fault or Misconduct
 

 ¶ 36. The parties agreed to a divorce on the ground of irreconcilable differences. R.L. testified to Georgia’s infidelity, but Georgia denied the accusations. However, R.L. did testify that he was living with another woman during the period of separation and that he had fathered several children by other women during the course of his marriage to Georgia.
 

 ¶ 37. After careful consideration of the evidence before us, we find that the chancellor did not abuse her discretion when she awarded Georgia periodic alimony. Therefore, we affirm the chancellor’s judgment.
 

 ¶ 38. THE JUDGMENT OF THE CHANCERY COURT OF CLAY COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . Lamar’s last name is not found in the record.